IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESTHER BROCKMAN for, | ) | |
| CHRISTOPHER BROCKMAN, | ) | |
| a minor, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-0205 |
| | ) | Judge David Cercone |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

I.      Recommendation

It is respectfully recommended that the Plaintiff's Motion for Summary Judgement
(Docket No. 6) be denied, that the Defendant's Motion for Summary Judgment (Docket No. 8) be
granted, and that the decision of the Commissioner of Social Security to deny Plaintiff's
application for benefits and supplemental security income be affirmed.

II.      Report

Presently before the Court for disposition are cross motions for summary judgment.

A.  Procedural History

On February 11, 2003, Esther Brockman ("Plaintiff"), on behalf of her minor son,
Christopher Brockman ("Christopher") by her counsel, timely filed a complaint pursuant to
Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g), § 1383(c)(3) for

review of the Commissioner's final determination disallowing a claim for childhood

supplemental security income ("SSI") under Title XVI the Social Security Act, as amended, 42

U.S.C. §§1381-83f.  The prior procedural history in this matter is as follows:

Plaintiff previously filed application for DIB  alleging that her minor son was owing to

Attention Deficit/Hyperactivity Disorder ("AD/HD") and Anxiety Disorder.  At Plaintiff's

request, a hearing was held on June 10, 2002[1] and benefits were denied by the Administrative

Law Judge ("ALJ") on September 23, 2003.  The Appeals Counsel denied Plaintiff's request for

review by decision dated January 8, 2004.

The record indicates that the ALJ concluded that Christopher, while suffering AD/HD

and Oppositional Defiant Disorder, did not meet the "marked limitation" standard for entitlement

to benefits under the relevant provisions of the Act.  He concluded  that based upon the evidence

of the record as a whole, Christopher had AD/HD and an oppositional defiant disorder, but that

his impairment did not meet the requisite severity.  See Record at 15-23.

Plaintiff asserts that the ALJ erred in (1) refusing to accept as binding the uncontroverted

medical evidence of Christopher's treating psychiatrist, Dr. DePietro,  regarding Christopher's

level of disability, (2) disregarding the findings of the agency's own consultative examiner, Dr.

Cohen, and (3) failing to obtain further medical expert examination and testimony.  See

Plaintiff's Brief in Support of Motion for Summary Judgment ("Plaintiff's Brief in Support") at 1-

2.

---

1.  Both Plaintiff and her son testified at this hearing, at which they were represented by counsel.

B.  Statement of Facts

Christopher was born on May 22, 1995 and was thus seven years old as of the administrative hearing.

The medical records submitted into evidence in support of Plaintiff's application for benefits indicate that in April through June 2000, Christopher, who as then four years old, was seen at Western Psychiatric Institute and Clinic ("WPIC") pursuant to his mother's complaints of aggressive and disruptive behavior at home and at school, poor ability to maintain attention, and hyperactivity.  At that time, he was diagnosed with Adjustment Disorder and family therapy was recommended.  See R. at 100-117.  In August, 2000, an examining physician noted that Christopher had done well at summer camp, exhibiting no behavioral problems in his interactions there.  See R. at 134.

In July, 2001, Plaintiff completed a Child Functioning Report for the SSI claim she filed on her son's behalf.  See R. at 84-92.  In it, she reported that Christopher had friends, got along with teachers, played team sports, had difficulty finishing things he found uninteresting but completed his homework, and was able to work on things on his own.

In connection with Plaintiff's claim, a psychological examination was performed on September 17, 2001 by the Agency's consultative examiner, Dr. Cohen.  He found Christopher friendly and cooperative with the minor signs of attention and concentration problems generally expected of a six-year-old.  See R. at 148-49.  Dr. Cohen noted that Christopher was previously

diagnosed with Adjustment Disorder, and further noted the need to rule out AD/HD; his prognosis was guarded *based on Christopher's prior medical history*. <u>See</u> R. at 150.[2]

Also in connection with Plaintiff's claim, Christopher's first grade teacher, Ms. Deal, completed a Teacher's Questionnaire on September 19, 2001.  She reported that Christopher was doing well in a regular first grade program; was very cooperative, happy and friendly; usually followed the rules; and displayed occasional distraction not out of the ordinary for his age.  <u>See</u> R. at 99.  She further reported she'd not seen misbehavior in the classroom of the type Christopher's mother reported to occur at home.  <u>See</u> R. at 100.

On October 28, 2001, a state medical consultant, Dr. Link, reviewed Christopher's records and concluded his impairment did not meet that necessary for benefit qualification.  <u>See</u> R. at 152-53.

Christopher was again seen at WPIC in November, 2001, in accordance with his mother's continuing concerns.  A provisional diagnosis of AD/HD was made and he began bimonthly therapy with John Neubert, a therapist under the supervision of treating psychiatrist, Dr. DePietro.  <u>See</u> R. at 166-84; <u>id.</u> at 175 ("The diagnosis of ADHD is currently seen as being provisional in light of the discrepancy between the parent and the teacher's forms.").  His diagnoses included Attention Deficit Disorder, Anxiety Disorder and possible Depression, and he was prescribed Ritalin, which he did not take, and Adderall.  <u>See</u> R. at 169.

---

2.  <u>See</u> <u>id.</u> (explaining that although the history "noted some significant problems in terms of behavior . . . during the examination itself this was not manifest" and concluding that Christopher should be "followed more aggressively" to determine his "every day functioning" abilities).

On June 4, 2002, Dr. DePietro completed a form "Childhood Impairment/Disability Questionnaire" in which he checked categories indicating that Christopher had markedly limited attention and relationship skills.  He also noted that although Christopher's grades were good, he was "likely performing below ability" for these reasons, and that he might benefit from supportive classroom assistance and in-home therapy.  See R. at 185-86.[3]

C.  "Substantial Evidence" Standard of Review

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act. 42 U.S.C. § 405(g).  See also, e.g., Richardson v. Perales, 402 U.S. 389 (1971); Adorno v.  Shalala,  40  F.3d 43  (3d Cir. 1994).

 More specifically, 42 U.S.C. Section 405(g) provides:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1000) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).  Although there may be contradictory evidence in the record, and/or although this

---

3.  But see Dr. DePietro's 2001-2002 Progress Notes, consistently diagnosing "moderate problems with education and primary supports."  R. at 169, 172, 177, 180, 182. See also id. (discussing Christopher as pleasant and cooperative, "somewhat hyperactive", and achieving excellent grades in an accelerated school program).

Court may have found otherwise, it is not cause for remand or reversal of the Commissioner's decision if substantial support exists.  Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).

      D.  Disability Evaluation

      The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that Christopher was not disabled within the meaning of the Act.

      To be eligible for benefits, a child must have a "medically determinable physical or mental impairment which results in marked and severe functional limitations."  42 U.S.C. § 1382.  Eligibility is considered under a sequential, three-step evaluation which looks to whether the child (1) is employed, (2) suffers a "severe impairment", and (3) suffers marked and severe functional limitations as a result of his medically-determined impairment.  As Plaintiff acknowledges, to meet step three, a child must have two areas of markedly impaired, or one area of extreme, functional limitations.  See 20 C.F.R. §§ 416.924; Brief in Support at 8.

      E.  Analysis

      Plaintiff asserts that the ALJ improperly refused "to accept as binding uncontradicted evidence" of the treating psychiatrist, the Agency's own examiner, and the testimony of Christopher's mother.  See Brief in Support at 7 (citing Van Horn v. Schweiker, 717 F.2d 871 (3d Cir. 1983); Schaaf v. Matthews, 574 F.2d 157 (3d Cir. 1978)).  She further asserts that the ALJ was required to find Christopher disabled based on Dr. DePietro's opinion of his marked functional limitations in the areas of attention/concentration and social skills.  See id.  Finally, she notes that in disablity cases "a request for medical expert testimony in order to assist the ALJ in his understanding of the impairments *may* be made."  Brief in Support at 8 (emphasis added).

As Plaintiff correctly observes, an ALJ may not "engag[e] in medical diagnosis" or fail to "give adequate consideration to unrebutted medical evidence."  Brief in Support at 7.  Review of the record indicates, however, that in this case the ALJ, in making his disability determination, did not place sole reliance on Dr. DePietro's June 2002 statement regarding Christopher's functional limitations because the ALJ concluded this statement was neither supported by the psychiatrist's objective medical evidence nor consistent with the other evidence before the ALJ. This constitutes both "adequate justification" and "valid rationale" for purposes of this Court's substantial evidence review.  More specifically:

(1)  As reflected in Plaintiff's own Brief in Support, Dr. DePietro's June, 2002 statement relied heavily upon his summations of Christopher's history of behavior as reported by his mother, in addition to his own limited objective findings.  See Brief in Support at 6 (quoting Dr. DePietro's extensive notations of Plaintiff's reporting of her son's behavior); see also R. at 17 (Decision of ALJ noting that Dr. DiPietro reiterated Plaintiff's claims of inattentive and aggressive/oppositional behavior).   The ALJ was within his rights to give less weight and/or deference to those of the doctor's medical opinions that were premised on self-reporting.[4]

---

4.  To the extent that Dr. DePietro's opinion incorporated Plaintiff's purely subjective reporting, and Dr. DePietro's opinions accorded full-credit to that reporting, it is important to note that credibility findings as to, and the proper weight to be accorded, a claimant's account of his/her subjective complaints and limitations are for the ALJ, although they are to be seriously considered.  See Kephart v. Richardson, 505 F.2d 1085, 1089 (3d Cir. 1974); Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984).  And so long as a plaintiff's subjective complaints have been properly addressed, the ALJ's decisions in that regard are subject only to the substantial evidence review discussed in Section C, supra.  See Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975) (concluding that where  "plaintiff did not satisfy the fact finder in this regard, so long as proper criteria were used, [it] is not for us to question"); see also Kephart, 505 F.2d at 1089 (noting that credibility determinations of ALJ are entitled to deference).

(2) Moreover, a treating physician's opinion on functional limitations is entitled to enhanced weight only to the extent it is supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence of record.  See 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  See also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (holding that ALJ may afford physician's opinions more or less weight depending on the extent to which they are supported); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (noting that doctor's opinions unsupported by objective medical evidence is "weak evidence at best"); Serrano-Diaz v Barnhart, 2004 WL 2431693, *6 (E.D. Pa. October 29, 2004) (noting that objective medical evidence is not that "prescribed based on plaintiff's subjective complaints").  Cf. Roddy v. Sec. of HHS, 1990 WL 166565, *2 (N.D. Ohio July 3, 1990) (affirming decision of ALJ where nothing in treating physician's evidence " indicate[d] the existence of disabling functional limitations of the sort" the physician described in a letter asserting that [claimant] was disabled).

(3)  The June, 2002 form on which Plaintiff relies was a "box checking" form and therefore entitled, as a matter of law, to less deference.  See Mason, 994 F.2d at 1065 (explaining that the Third Circuit regards "form reports, in which a physician's obligation is only to check a box or [to] fill in a blank" as weaker evidence).

(4)  Finally, both Dr. DePietro's own clinical findings and notations, and other evidence of record, supported the ALJ's legal determination that Christopher did not suffer the degree of limitations required for entitlement to disability benefits.  This determination was for the ALJ, see C.F.R. §§ 404.1527(e), 416.927(e), and so long as he identified it as supported by "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion", it may not be overturned.  See  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1000) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

As a final matter, it should be noted that Plaintiff's Brief in Support asserts that the ALJ was bound by Dr. DePietro's conclusion.[5]  Under the treating physician doctrine, the ALJ is to accord treating physicians' reports "substantial and at times even controlling weight".[6]  However, it remains for the ALJ to review all the medical findings and other evidence presented in support of a disability claim and to make the ultimate legal determination of disability.  See, e.g., Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994).  As discussed above, an ALJ  remains entitled to disagree with even a treating physician's conclusion as to Plaintiff's disability status, in the light of the medical record taken as a whole.  Nothing in the records Plaintiff brings to this Court's attention calls the ALJ's decision into question under the applicable "substantial deference" standard of review.[7]

---

5.  See Brief in Support at 7-8 ("Dr. Frank DePietro concluded that . . . Christopher . . . had marked limitations  . . . .  Therefore, according to the standard, he is disabled.").

6.  See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).

7.  Plaintiff's assertion that the ALJ should also be reversed for failure to obtain further expert medical evidence reflects a misunderstanding of the ALJ's obligations.  Where the Agency has referred Plaintiff for a consultative evaluation, and the medical evidence of record will support the ALJ's findings, he is not required to continue to obtain additional examinations.  See Carter v. Apfel, 220 F.Supp.2d 393, 399 (M.D. Pa. 2000).

III.  <u>Conclusion</u>

For the reasons discussed above, it appears that the Commissioner's  conclusion is supported by substantial evidence.  For these reasons, it is recommended that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, within ten (10) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Lisa Pupo Lenihan

LISA PUPO LENIHAN
United States Magistrate Judge

Dated: August 3, 2005

cc:  Honorable David Cercone
     United States District Judge

     Gregory G. Paul, Esq.
     2500 Gulf Tower
     707 Grant Street
     Pittsburgh, PA  15219

     Laura Schleich Irwin, Esq.
     U.S. Attorney's Office
     700 Grant Street, Suite 400
     Pittsburgh, PA  15219